UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY ) | Case No. 1:10-cv-00161-JHM-ERG |
| ) | ELECTRONICALLY FILED |
| PLAINTIFF ) | |
| ) | |
| vs. ) | |
| ) | |
| ANTHONY DEWAYNE POYNTER, ET AL ) | |
| ) | |
| and ) | |
| ) | |
| GLASGOW INSURANCE AGENCY, INC. ) | |
| Serve:  Jerry Hardison ) | |
|         318 S. Green Street ) | |
|         Glasgow, KY 42142 ) | |
| ) | |
| JERRY HARDISON ) | |
| 318 S. Green St. ) | |
| Glasgow, KY 42141 ) | |
| ) | |
| DEFENDANTS ) | |
| ) | |
| PBI BANK, INC., ET AL ) | |
| ) | |
| THIRD-PARTY PLAINTIFFS ) | |
| ) | |
| vs. ) | |
| ) | |
| GLASGOW INSURANCE AGENCY, INC., ET AL ) | |
| ) | |
| THIRD-PARTY DEFENDANTS ) | |

## **AMENDED COMPLAINT**

Comes the Plaintiff, Great American Insurance Company ("Great American"), by counsel, and for its Amended Complaint against the Defendants, Glasgow Insurance Agency ("GIA") and Jerry Hardison ("Hardison"), hereinafter collectively referred to as "Defendants," unless the context requires otherwise, and states as follows:

1. Great American hereby restates, reiterates, and realleges each and every allegation set forth in its Complaint filed in this matter as though fully set forth herein, a copy of which is attached hereto as Exhibit "A".

2. GIA is a Kentucky corporation, with its principal place of business located in Glasgow, Barren County, Kentucky, and is subject to the jurisdiction of this Court.

3. Hardison is an individual citizen who resides in Glasgow, Barren County Kentucky.

## FACTS COMMON TO ALL CLAIMS

4. Beginning in 2007, a construction company account known as Poynter Construction, Inc. ("Poynter"), was submitted by GIA and Hardison to Great American for consideration of providing surety bond credit. Initially, Great American required that Poynter be capitalized in an amount of $200,000.00 in order to be considered for the requested surety credit, which capitalization requirement was conveyed by Great American to GIA and Hardison.

5. On November 26, 2007, Great American was notified by GIA and Hardison that Poynter had agreed to the capitalization requirement, and that such would be accomplished before the year ending December 31, 2007. Between that date and its receipt of the December 31, 2007 year-end financial statements, Great American was notified by GIA and Hardison that Poynter had been capitalized in the amount of $500,000.00. On January 9, 2008, based upon capitalization in the amount of $500,000.00, Great American confirmed particular rates related to surety bonds to be written on behalf of Poynter

6. The December 31, 2007 year-end financial statement prepared on behalf of Poynter stated stockholders equity in the amount of $509,127.00. The December 31, 2007 financial statement further stated a cash balance of $503,565.00 and no corresponding liability

related to such cash balance. The source of the cash balance was a loan from PBI Bank to Poynter Construction in the amount of $500,000.00 dated December 21, 2007 with a maturity date thirteen days later on January 2, 2008. This thirteen day loan was also the source of the funds which were classified as additional paid-in-capital.

7. Upon information and belief, GIA and Hardison had knowledge of the source of the $500,000.00 loan, that such was short-term, and that such would be paid by Poynter immediately after the December 31, 2007 year-end. GIA and/or Hardison failed to disclose such knowledge to Great American, and which was done with the intent to have Great American rely upon such in underwriting and providing surety bonds to Poynter.

8. Great American relied upon the year-end 2007 financial statement and wrote numerous final bonds and bid bonds, and extended surety credit based upon the stated capitalization of Poynter.

9. Beginning in June 2008, Great American requested GIA and/or Hardison to have Poynter prepare a June 30, 2008 CPA prepared interim financial statement, and was continuing to approve bid bonds for substantial sized projects based upon the previously provided December 31, 2007 year-end financial statements.

10. On October 1, 2008, Great American received from GIA and/or Hardison the June 30, 2008 interim financial statement for Poynter which was dated on September 19, 2008. The interim statement revealed that the additional paid-in-capital in the amount of $469,196.00 was no longer in Poynter, and further stated that said amount had been paid out in distribution during the six month period ending June 30, 2008. Upon information and belief GIA and/or Hardison had knowledge prior to the June 30, 2008 interim financial statement being presented to Great American on October 1, 2008, that the capital allegedly contributed to Poynter in the

amount of $500,000.00 was no longer in place, and that GIA and/or Hardison failed to disclose such knowledge to Great American.

11. After Great American discovered that the additional paid-in-capital had allegedly been paid in distributions to Poynter, Great American required that $500,000.00 be put back into Poynter, and conveyed such requirement to GIA and Hardison.

12. At the same time in 2008, Poynter hired and consulted with another CPA, Bobbie Cherry ("Cherry"). On November 7, 2008, Cherry provided Poynter with a memorandum setting forth what financial statement steps needed to be accomplished before the December 31, 2008 to improve Poynter's financial condition for bonding credit purposes. Included in that memorandum was a recommendation that Poynter borrow $1,000,000.00 personally on a five year interest only note which Cherry understood Poynter had the ability to do with a loan from his grandparents.

13. On November 10, 2008, Great American approved a bid bond for a project known as City of Oak Grove which Great American approved on the condition conveyed to GIA and/or Hardison to be conveyed to Poynter that $500,000.00 be brought back into Poynter. GIA and/or Hardison understood such condition was required for authority to issue the bid bond. Poynter was the successful bidder on the Oak Grove Project, and Great American authorized GIA and Hardison to write the final performance and payment bonds for the project on December 1, 2008, on the condition that the $500,000.00 would be brought back into Poynter on or before December 15, 2007.

14. On December 2, 2008, a meeting occurred between Poynter, Great American, Hardison, and Cherry. At that meeting, Cherry presented his November 7, 2008 memorandum to all present at the meeting, and Poynter presented the surety line of credit which he was seeking

on behalf of Poynter Construction. Great American advised Poynter that in order to obtain the requested line of credit, which included existing work which was bonded, Poynter needed to have working capital of at least $1,000,000.00. Poynter was told if he obtained a loan for the $1,000,000.00, how the loan would need to be structured in order for it to be deemed working capital. In particular, the loan would need to be in Dewayne Poynter's name personally, he would then need to loan the $1,000,000.00 to Poynter on an unsecured basis, and it would need to be for a period in excess of twelve months.

15. Upon information and belief, GIA and/or Hardison had knowledge of the following facts concerning the $1,000,000.00 to be injected into Poynter:

a. A promissory note was entered into by Poynter in favor of PBI Bank in the amount of $1,000,000.00 on December 31, 2008, and had a stated maturity date of January 26, 2010, some thirteen months thereafter.

b. Although the loan was stated to be unsecured, in fact the loan proceeds were deposited into a Poynter Construction direct deposit account at PBI Bank which was blocked, which prevented Poynter Construction from having any availability to use said funds, and was blocked with the specific intent to use said funds to pay off the loan in January 2009. The loan was thereafter repaid to PBI Bank on January 20, 2009.

16. Great American relied upon the $1,000,000.00 infusion of working capital into Poynter to continue with the existing and future surety bond line of credit which Great American provided to Poynter. Had Great American been made aware that the loan for $1,000,000.00 which provided the working capital infusion had been paid to PBI Bank in January 2009, Great American would not have had continued to approve bid bonds and write final bonds for Poynter, and could have taken action to protect its interest on existing bonded projects.

However, upon information and belief, GIA and/or Hardison concealed the payment of the loan from Great American and its representative.

17. On or about May 1, 2007, GIA entered into an written agreement with Great American whereby it agreed to act on behalf of Great American in conjunction with various bonds written by Great American ("Agency Agreement"). A copy of said contract is attached hereto as Exhibit "B" and incorporated by reference as though fully set forth herein.

18. Pursuant to that Agency Agreement, GIA and Hardison agreed to, among other things:

1. APPOINTMENT AND AUTHORITY

2. Agent is an independent contractor and not an employee of Company. Company does hereby appoint and grant authority to Agent to:
    a) Solicit and deliver bonds, policies, certificates and endorsements (hereinafter referred to as bond business).
    b) Provide all usual and customary services of an insurance agent on all bond business accepted by Company from Agent.
4. Agent shall conduct business on behalf of Company only pursuant to authority granted by this Agreement and in accordance with the underwriting rules and other written directives furnished to Agent by Company. The underwriting guidelines and written directives may be amended by Company at any time.
6. Agent will report to Company as expeditiously as practicable all risks bound with Company and all endorsements, cancellations, renewals and similar actions that affect or change a risk previously bound with Company.

V. INDEMNIFICATION

4. Agent shall indemnify Company against any liabilities Company may incur as a result of any act of Agent in violation of this Agreement or outside the scope of authority granted to agent pursuant to this Agreement. In addition, Agent shall indemnify and hold Company

> harmless for all fines, penalties and related expenses which Company may incur as a result of any action of Agent which is in violation of any law or regulation.

19. GIA and/or Hardison was informed by Great American and was aware that in order to obtain the rates for surety bonds described in Paragraph No. 6 herein that Poynter was required to and had agreed to capitalize Poynter construction with at least $500,000.00 by December 31, 2007.

20. GIA and/or Hardison was informed by Great American, and was aware that in order to obtain the requested line of credit described in Paragraph No. 15 herein, which included existing work which was bonded, Poynter needed to have working capital of at least $1,000,000.00. Hardison was also aware of the requirements imposed by Great American in the event that a loan was used to satisfy the capital requirement, including that the loan would need to be in Dewayne Poynter's name personally, that he personally would need to loan the $1,000,000.00 to Poynter on an unsecured basis, and that it would need to be kept in Poynter for a period in excess of twelve months.

21. Upon information and belief, GIA and/or Hardison was aware of, and/or by instructing Poynter on how to misrepresent his financial condition to Great American by only funding Poynter when the year-end financial statements were being prepared, entered into the plans and schemes with the other Defendants herein as set forth in the Complaint attached hereto, to misrepresent the financial condition of Poynter so that Poynter could obtain surety credit with Great American.

22. Despite knowledge of Great American's requirements, GIA and/or Hardison negligently failed and/or intentionally refused to inform Great American of the plans or schemes to misrepresent the financial condition of Poynter.

## COUNT VI

23.     Great American hereby restates, reiterates, and realleges each and every allegation set forth hereinabove.

24.     GIA and/or Hardison owed a fiduciary duty to Great American, including but not limited to a duty of good faith and fair dealing, a duty of honesty and loyalty, and a duty of care with respect the services they provided pursuant to the Agency Agreement.

25.     GIA and/or Hardison breached their fiduciary duty to Great American by failing and/or refusing to inform Great American of and/or facilitating the plan or scheme to misrepresent the financial condition of Poynter as set forth herein.

26.     As a result of GIA and/or Hardison's breach of said fiduciary duty, Great American has suffered substantial losses under the bonds written by Great American on behalf of Poynter, in an amount in excess of the jurisdictional limit of this Court, which it is entitled to recover from GIA and/or Hardison.

## COUNT VII

27.     Great American hereby restates, reiterates, and realleges each and every allegation set forth hereinabove.

28.     Upon information and belief, based upon the factual allegations set forth herein, GIA and/or Hardison participated in and entered into the plan or scheme to commit fraud and misrepresentations with Poynter, J. Alexander, D. Alexander, Wilcutt, and PBI Bank upon Great American, and upon which Great American has relied upon the fraudulent statements and misrepresentations in writing bonds on behalf of and in providing surety credit on behalf of Poynter, and as a result thereof has suffered substantial losses under the bonds written by Great

American on behalf of Poynter, in an amount in excess of the jurisdictional limit of this Court, which it is entitled to recover from GIA and/or Hardison.

## COUNT VIII

29. Great American hereby restates, reiterates, and realleges each and every allegation set forth hereinabove.

30. GIA and/or Hardison breached the Agency Agreement by failing to provide all usual and customary services of an insurance agent on all bond business accepted by Great American from him when he failed to inform Great American of and/or engaged in the plan or scheme to misrepresent Poynter's financial condition as set forth herein.

31. GIA and/or Hardison breached the Agency Agreement by failing act in accordance with the underwriting rules and other written directives furnished by Great American to GIA and/or Hardison when they permitted Poynter to submit and/or facilitated Poynter's submission of false and/or misleading financial statements to Great American despite their having knowledge that Great American would not authorized GIA and/or Hardison to issue the bonds or provide surety credit if Great American was made aware of Poynter's true financial condition, and GIA's and/or Hardison's knowledge that Great American expected financial statements to accurately reflect Poynter's financial condition.

32. GIA and/or Hardison breached the Agency Agreement by failing to report to Great American as expeditiously as practicable the changes in Poynter's financial condition when GIA and/or Hardison obtained knowledge of such.

33. As a result of GIA's and/or Hardison's breach of Agency Agreement, Great American has suffered substantial losses under the bonds written by Great American on behalf of

Poynter, in an amount in excess of the jurisdictional limit of this Court, which it is entitled to recover from GIA and/or Hardison.

## **COUNT IX**

34.     Great American hereby restates, reiterates, and realleges each and every allegation set forth hereinabove.

35.     Great American is entitled to be indemnified by GIA and/or Hardison pursuant to the Agency Agreement for any loss or expenses suffered by Great American as a result of GIA's and/or Hardison's breaches set forth in Count VIII.

NOW, WHEREFORE, the Plaintiff, Great American Insurance Company, demands as follows:

1.     Judgment against the Defendants as set forth in its Complaint attached hereto as Exhibit "A".

2.     Judgment against the Defendants, Glasgow Insurance Agency Inc. and Jerry Hardison, jointly and severally, on Counts VI, VII, VIII, and IX of its Amended Complaint in an amount to be determined by the Court, and which is in excess of the jurisdictional limit herein, and with pre-judgment and post-judgment interest thereon;

3.     Judgment against the Defendants, Glasgow Insurance Agency Inc. and Jerry Hardison, jointly and severally, for its reasonable attorney's fees incurred herein

4.     Judgment for its expenses and costs incurred herein;

5.     Trial by jury; and

6.     For any and all other relief which the Court may deem appropriate.

Respectfully Submitted,

*/s/ Timothy D. Martin*
TIMOTHY D. MARTIN
BENJAMIN A. BELLAMY
WARD, HOCKER & THORNTON, PLLC
Hurstbourne Place, Suite 700
9300 Shelbyville Road
Louisville, Kentucky 40222
Telephone: (502) 583-7012
Facsimile: (502) 583-7018
TMartin@whtlaw.com
Ben.Bellamy@whtlaw.com
*Counsel for Plaintiff*
*Great American Insurance Company*

## CERTIFICATE

I hereby certify that on the 22nd day of June, 2012, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF System, and the foregoing document was served electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures upon all parties in the electronic filing system in the case by electronic mail including:

Scott A. Bachert
W. Greg Harvey
Harned, Bachert & McGehee, PSC
324 East Tenth Avenue
P.O. Box 1270
Bowling Green, Kentucky 42102-1270
(270) 782-3938
(270) 781-4737 (Fax)
bachert@hbd-law.com
harvey@hbmfirm.com
*Counsel for Defendants*
*PBI Bank, Inc.*
*Dennis K. Wilcutt*

Bobby H. Richardson
Richardson, Gardner, Barrickman & Alexander
117 East Washington Street
Glasgow, Kentucky 42141
(270) 651-8884
(270) 651-3662 (Fax)
mms@rgba-law.com
*Counsel for Defendants*
*Taylor, Polson & Company, PSC*
*John M. Taylor, III, CPA*

Mark H. Flener
1143 Fairway Street, Suite 101
P. O. Box 8
Bowling Green, Kentucky 42102
(270) 783-8400
(270) 783-8872 (Fax)
mflener@bellsouth.net
*Counsel for Defendants*
*James Alexander*
*Dorothy Alexander*

Jeffrey A. Taylor
Landrum & Shouse, LLP
106 West Vine Street, Suite 800
P.O. Box 951
Lexington, Kentucky 40588-0951
(859) 255-2424, Ext. 248
(859) 233-0308 (Fax)
jtaylor@landrumshouse.com
*Counsel for Third-Party Defendants*
*Glasgow Insurance Agency, Inc.*
*Jerry Hardison*

  I further certify that a copy of the foregoing document and Notice of Electronic Filing, properly addressed and postage pre-paid, was deposited in the United States Mail to:

Anthony Dewayne Poynter
561 Brentwood
Glasgow, Kentucky 42141
*Defendant*

            */s/ Timothy D. Martin*
            *Counsel for Plaintiff*
            *Great American Insurance Company*